UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| DOROTHY M. BAPTISTE, ) | Bankruptcy No. 09 B 07338 |
|       Debtor. ) | |
| ALLIANT CREDIT UNION, ) | |
|       Plaintiff, ) | |
| v. ) | Adversary No. 09 A 00707 |
| DOROTHY M. BAPTISTE, ) | |
|       Defendant. ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following trial, the following Findings of Fact and Conclusions of Law are made and will be entered.

This case is not too different from many cases seen in bankruptcy courts -- a parent helps a child obtain an automobile, and the parent and child agree that the child will make ongoing payments as they become due. However, the parent -- here the debtor in the related Chapter 13 bankruptcy case -- carelessly signed contract papers, allegedly not understanding that they bound her personally. As a result, the Creditor-Plaintiff in this Adversary proceeding seeks a declaration and judgment that the Debtor-Defendant in this case obtained a loan from it through false pretenses, a false representation, or actual fraud, and that the debt incurred as a result is not dischargeable through bankruptcy. Essentially Plaintiff argues that the Debtor never intended to pay or drive this car herself, and misrepresented in saying that she would pay for and drive the car. However, for reasons stated below, judgment will be entered by separate order for the Defendant and against the Plaintiff.

1

## FINDINGS OF FACTS

On March 18, 2005, Dorothy Baptiste ("Baptiste"), the Debtor-Defendant in this Adversary proceeding, accompanied her daughter, Sonja Baptiste ("Sonja"), to Watson Motorsport. (Trial Tr. 74; Pl. Ex. C) While at Watson Motorsport, Baptiste signed a retail installment contract for purchase of a 2002 Ford Explorer. She provided her credit information and agreed in writing to provide insurance for the vehicle. Title for the vehicle was obtained in her name. (Trial Tr. at 71; Pl. Ex. A, B, C, D, E, F, G). At the time, however, Baptiste and Sonja made it clear to a representative of Watson Motorsport that the vehicle was intended for use by Sonja. (Trial Tr. at 74–75.) Watson Motorsport passed on Baptiste's credit application to Alliant Credit Union ("Alliant") the Creditor-Plaintiff in this proceeding, through an online system. (Trial Tr. at 30–33.) Alliant, relying on the application received through the system and the contract that Baptiste signed, funded the loan. (Id. at 33-38.)

Sonja made at least twenty-one payments to Alliant, including the first payment Alliant received on the loan slightly over one month from when the loan originated. (Pl. Ex. I, J.) The debtor Baptiste made at least fourteen payments, totaling over $8,000. (Id.) On August 16, 2006, Baptiste called Alliant and told Alliant's representative that the car was supposed to be in Sonja's name, and that she had tried to rewrite the contract with the dealer to reflect that. (Def. Ex. 3, at 20.) On September 13, 2005, Alliant's records indicate that it knew the loan to be what is sometimes referred to as a "straw loan," that is a loan given to one person although another person is the intended user of the vehicle. (Id.) Throughout the duration of the loan Baptiste continually reiterated to representatives of Alliant that Sonja was driving and paying for the vehicle. (Def. Ex. 3 at, e.g., 6, 9, 10–12, 14–16).

## **CONCLUSIONS OF LAW**

Under 11 U.S.C. § 523(a)(2)(A),[1] a debt for money or an extension of credit is not dischargeable to the extent the debtor obtained that money or credit by false pretenses, a false representation, or actual fraud. To except Baptiste's debt to it from discharge under the false representations or statement prongs of § 523(a)(2)(A), Alliant must prove that: (1) Baptiste obtained the loan through representations that Baptiste "knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation;" (2) Baptiste had "an intent to deceive" Alliant; and (3) Alliant actually and reasonably relied on the false representation. *See Mayer v. Spanel Int'l*, 51 F.3d 670, 673 (7th Cir. 1995) (criticized on other grounds in *Field v. Mans*, 516 U.S. 59 (1995); *In re Dobek*, 278 B.R. 496, 504 (Bankr. N.D. Ill. 2002)). While false representations and statements are not identical to actual fraud, they may be analyzed in a similar manner when the alleged fraud perpetrated was a false representation, as is alleged here. *See McClellan v. Cantrell*, 217 F.3d 890, 892–93 (7th Cir. 2000).

### *False Representation and Reliance*

Defendant as a contracting party is bound by contractual documents signed by her, whether or not she read and understood what she was signing. *Wells Fargo Bank, N.A. v. Siegel*, 540 F.3d 657, 663–64 (7th Cir. 2008). Baptiste signed her name to auto loan documents, which stated that she was financing the purchase of a car, and thereby adopted all the promises found in those documents, including the promises to make payments and to carry insurance. By her own admission she did not then intend to make the payments personally or personally to take out insurance on the vehicle,

---

[1] Alliant brought this action under 11 U.S.C. § 523(a)(2) generally. However, it only argued nondischargeability under § 523(a)(2)(A). Any argument under § 523(a)(2)(B) will be deemed waived. *See, e.g. Gayton v. McCoy*, 593 F.3d 610, 625 (7th Cir. 2010).

4

On March 4, 2009, Baptiste filed her voluntary petition for relief under Chapter 13 of the Bankruptcy Code in bankruptcy case number 09-07388. On the same day, she filed a Chapter 13 Plan [Bankr. Docket No. 6]. On March 24, 2009, Alliant filed a Motion for Relief from Stay as to the 2002 Ford Explorer. [Bankr. Docket No. 14]. An Order Granting the Motion for Relief from Stay was entered [Bankr. Docket No. 17], allowing Alliant to enforce its rights against the Explorer. Baptiste subsequently modified her Chapter 13 Plan [Bankr. Docket No. 19] indicating that she would surrender her interest in the Explorer to Alliant. Alliant subsequently repossessed the Explorer and exercised its right to sell it. (Plaint. Ex. J).

Alliant filed this Adversary Complaint on August 11, 2009, seeking (a) a determination that Baptiste's debt to it is not dischargeable since the loan was assertedly obtained through false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2), and also seeking (b) a money judgment to establish the assertedly nondischargeable debt due in the amount of $19,510.51, plus interest, fees, and costs.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. It is before the Court pursuant to 28 U.S.C. § 157 and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This Adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

intending to rely on her daughter to do so. (Trial Tr. at 71, 82–84.) Therefore, Baptiste did make an inaccurate representation in documents used to obtain the car loan, but says that she did not intend thereby to deceive.

Baptiste does not dispute that Alliant actually and reasonably relied on her representations, and the record supports Alliant's contention that it did so at the time of original purchase. (Id. at 32–35)

### *No Intent to Deceive*

A plaintiff may prove intent to deceive through the debtor's subjective intent at the time the representation was made, or through a logical inference of that intent. *In re Dobek*, 278 B.R. 496 (Bankr. N.D. Ill. 2002). Baptiste's testimony and other evidence presented indicates that she did not have the subjective intent to deceive. Baptiste testified that she did not intend to defraud Alliant and that the salesperson knew of her intentions at the time of purchase, namely that the car was for Sonja. (Trial Tr. at 89). She also said that she attempted to renegotiate the loan documents when she realized that she, and not her daughter, was responsible for the loan; Alliant's record corroborates those attempts. Baptiste's testimony was credible, and it demonstrated that she did not have the subjective intent to deceive Alliant. Baptiste's credibility is not damaged by her claimed lack of knowledge of her daughter's whereabouts. Baptiste would have no motive to lie about this. Regardless, it is irrelevant to the case at hand, which is solely concerned with whether Baptiste intended to deceive Alliant at the time she obtained the loan.

Nor does the record support a logical inference that Baptiste intended to deceive Alliant. Unlike the debtor in *In re Dobek*, 278 B.R. 496 (Bankr. N.D. Ill. 2002) who financed the purchase of three vehicles and immediately turned over possession of them to her boyfriend who had bad

credit, Sonja made twenty-one payments and Baptiste made or arranged fourteen payments that Sonja missed. Baptiste's attempts to renegotiate the terms of the loan and her substantial payments to Alliant also demonstrate that she never intended to deceive Alliant.

### *Affirmative Defenses*

Even if the initial debt had been obtained through false pretenses, a false representation, or fraud, that does not end the inquiry, since Baptiste raises three affirmative defenses: laches, estoppel, and waiver.

### *Alliant Waived its Rights now Asserted*

Waiver focuses on the actions of the non-breaching party. Waiver occurs when one party "[i]ntentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979). By September 13, 2006, at the latest, Alliant knew all the facts needed to know that the loan was, in its words, a "straw loan," that is a loan for the benefit of someone other than the named borrower. Additionally, there were at least twenty-one payments made by Sonja in the form of money orders in her name; Sonja's first direct payment came the first month after the loan originated. It is not necessary to determine whether Watson Motorsport acted as an agent for Alliant, as contended by Baptiste. While Debtor's original oral notification to the sales staff may not be viewed as a clear statement of Baptiste's intentions or as notice to an agent of Alliant, the money order payments in Sonja's name and Baptiste's frequent protestations to Alliant that Sonja was driving and paying for the vehicle were a clear indication and prompt notice to Alliant that a stranger to the transaction was using the car and paying for it. Alliant's own records reflect that it was aware that the loan was a straw loan from September 2006, at the latest.

Alliant chose not to act on its rights while it was being paid by Debtor's daughter. It chose not to repossess the vehicle at that time because it was being paid. [Trial Transcript at 132–34]. It also chose not to bring any action alleging fraud, or insist on Baptiste's strict adherence to the letter of the contract. While Alliant was certainly entitled to accept Sonja's payments, it thereby waived its right to insist on payments from Debtor. It now seeks, in words of the old saying, to "have its cake and eat it too." By accepting payments from both Debtor and daughter, Alliant acted in a manner inconsistent with intent to enforce contract provisions as to payment and driving limitations, and thus a defense of waiver was proven. Even if Alliant had proven that Baptiste's obtained the loan through false pretenses, a false representation, or actual fraud, Baptiste's debt to it would not be excepted from discharge under section 523(a)(2)(A).

### *Alliant is Guilty of Laches*

Laches is an equitable doctrine that prevents a party from asserting a claim if it unreasonably delayed raising it. *Lake Caryonah Improv. Ass'n v. Pulte Home Corp.*, 903 F.2d 505, 509 (7th Cir. 1990). Laches requires a showing that (1) the plaintiff was not diligent in pursuing its claim, and (2) that delay prejudiced the defendant. *Zelazny v. Lyng*, 853 F.2d 540, 541 (7th Cir. 1988). Here, evidence showed that Alliant delayed in asserting any fraud claim. Baptiste made many payments out of her pocket on the car loan and was thereby prejudiced by failure of Alliant to act on its asserted rights when it also received many payments from her daughter.

### *Alliant is not Estopped*

Estoppel "arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975). Baptiste failed to indicate how any misleading

7

behavior on Alliant's part induced her to act to her detriment, and thus a defense of estoppel was not established.

## CONCLUSION

It is found and held that Baptiste's debt to Alliant is dischargeable, since the loan was not obtained through false pretenses, a false representation, or actual fraud under the provisions of §523(a)(2) and also because Alliant waived it rights to assert a claim here and was guilty of laches.

If a mother's carelessness in reading documents signed by her and love for a daughter that needs a car were enough without more to show fraud, then there would be many more actions of this nature in the bankruptcy courts. Because Baptiste lacked the intent to deceive, the loan was not obtained by false pretenses, a false representation, or actual fraud under § 523(a)(2)(A). Further, even if Baptiste had obtained the loan through false pretenses, a false representation, or fraud, Alliant waived the right to bring an action on those grounds and is also barred by laches. Therefore, this debt will not be excepted from the discharge Baptiste may obtain by completing her Chapter 13 Plan. A separate Judgment Order will therefore be entered in Baptiste's favor and against Alliant.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 14th day of June, 2010.